**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>and<br><br>SOUTH END EDUCATION COMMITTEE, et al.,<br><br>Plaintiff-Intervenors,<br><br>v.<br><br>BOARD OF EDUCATION OF WATERBURY, CONNECTICUT, et al.,<br><br>Defendants. | **Civil No. 3:69-cv-13465-EBB**<br><br>Dated: May 12, 2026 |

**JOINT MOTION FOR DECLARATION OF UNITARY STATUS AND DISMISSAL**

Plaintiff United States of America and Defendants Board of Education of Waterbury, Connecticut, et. al. (the District) move the Court for a declaration of unitary status and dismissal of this matter. The District has fulfilled its affirmative desegregation obligations under the operative order in this case and the Fourteenth Amendment, entitling it to a declaration of unitary status and termination of the Court's jurisdiction. As grounds for this Motion, the Parties state:

## I. PROCEDURAL BACKGROUND

The United States filed this desegregation action in October 1969, alleging that the District denied Black and Puerto Rican students access to equal educational opportunities and failed to eliminate the segregation of elementary schools in the District. On June 7, 1973, the Court entered the operative consent order in this case (1973 Order), which requires the District to implement a student assignment plan for elementary students (K-8) and to provide programming for non-

English speaking students. *See infra* Section II.B. (detailing 1973 Order's requirements). On March 21, 1977, the Court amended paragraph 5 of the 1973 Order by extending the deadline for completion of North-Central Middle School. This amendment does not alter any of the 1973 Order's substantive requirements, but instead simply adjusts the construction timeline.

In November 2025, the United States initiated a case review in response to the District's inquiry about resolving this longstanding desegregation case. The District has worked closely with the United States to eliminate the vestiges of past *de jure* discrimination and satisfy the Court's desegregation orders, including providing the United States with current data and information about its compliance with the Court's desegregation orders. Based on its review, the United States joins this Motion.[1]

## II. LEGAL ANALYSIS

### A. Legal Standard

The standard established by the Supreme Court for determining whether a school district has achieved unitary status, thus warranting termination of judicial supervision, is whether: (1) the school district has fully and satisfactorily complied with the court's desegregation orders for a reasonable period of time; (2) the school district has eliminated the vestiges of past *de jure* discrimination to the extent practicable; and (3) the school district has demonstrated a good faith commitment to the whole of the court's order and to those provisions of the law and the Constitution that were the predicate for judicial intervention in the first instance. *See Missouri v.*

[1] In May 1975, the Court granted South End Education Committee's (the Committee) motion to intervene on behalf of Puerto Rican and Hispanic students in the District. To the Parties' knowledge, the Committee no longer exists. The Parties have found no evidence that the organization is still active, and it is not listed online as being registered with the State of Connecticut. Moreover, the Committee has not had any involvement in this case or any known interactions with the District for at least 25 years.

*Jenkins*, 515 U.S. 70, 87–89 (1995); *Freeman v. Pitts*, 503 U.S. 467, 491–92, 498 (1992); *Bd. of Educ. of Okla. City Pub. Sch. v. Dowell*, 498 U.S. 237, 248–50 (1991).

**B. The District Has Fulfilled Its Desegregation Obligations Under the Court's Orders and the Fourteenth Amendment.**

The District has fully and satisfactorily complied with the 1973 Order for a reasonable period of time, eliminated the vestiges of prior *de jure* segregation to the extent practicable, and demonstrated a good faith commitment to the Court's desegregation orders and the Fourteenth Amendment. Therefore, a declaration of unitary status and termination of the Court's supervision is warranted.

**1. The District is in Full Compliance with the 1973 Order's Student Assignment Requirements.**

The 1973 Order requires the District to develop and implement a student assignment plan for elementary students (K-8) that "achieve[s] the greatest amount of desegregation possible" and ensures "the burden of desegregation does not fall more heavily upon students of one race or national origin than upon students of another race or national origin." 1973 Order ¶ 1. To that end, the Court ordered the District to complete construction of three middle-school complexes to serve students in grades 6-8: East End Middle School, West End Middle School, and North-Central Middle School. *Id.* ¶¶ 3–5. The Court also ordered that, for the K-5 schools feeding into each middle school, the District identify the buildings to be used and reconstitute attendance zones "so as to obtain the greatest amount of desegregation possible." *Id.* ¶¶ 1–2. Notably, the Court indicated that "[a]ll parties agree that the completion of the proposed middle school complexes, plus a reconstitution of the zone lines for the K-5 schools so as to obtain the greatest amount of desegregation possible, would make the operation of the school system at that time in complete compliance with federal law concerning desegregation of public schools." *Id.* at 3–4.

The District has fully and satisfactorily complied with the 1973 Order's student assignment provisions. It has completed construction on all three middle-school complexes: Wallace Middle School in 1974, West Side Middle School in 1976, and North End Middle School in 1978.[2] The District has also restructured its elementary attendance zones accordingly. As a result, the District's schools are not racially identifiable, which is determined by calculating the extent to which a school's racial enrollments deviate from the district-wide racial enrollment. *Freeman,* 503 U.S. at 474, 491–92 ("[A] critical beginning point is the degree of racial imbalance in the school district, that is to say a comparison of the proportion of majority to minority students in individual schools with the proportions of the races in the district as a whole. This inquiry is fundamental.").

For the 2025–2026 school year, the District's total enrollment is 17,884 students, of whom 8.8% are White, 20.3% are Black, and 64.9% are Hispanic. Setting aside magnet schools,[3] none of the District's remaining 25 schools are racially identifiable in that none of their student enrollments deviate from the District-wide racial composition by 20 percentage points or more. *See infra* Student Enrollment Table (specifying the student enrollment and racial composition of each District school for the 2025-2026 school year); *see also United States v. Mississippi (Choctaw Cty. Sch. Dist.),* 941 F. Supp. 2d 708, 717 (N.D. Miss. 2013) ("Courts have commonly set either a

[2] The District has since renamed its middle-school complexes: East End Middle School is now Wallace Middle School, West End Middle School is West Side Middle School, and North-Central Middle School is North End Middle School.

[3] The District operates four magnet schools: Waterbury Arts Magnet High School, Waterbury Arts Magnet Middle School, Maloney Interdistrict Magnet School, and Rotella Interdistrict Magnet School. The racial composition of these magnet schools is not a factor in this analysis because the magnet schools also enroll students from surrounding suburban districts through regional agreements. Consequently, due to the inclusion of students from other school districts, these schools may reflect a different demographic composition than the District's non-magnet schools. All students who apply to attend magnet schools are chosen by a blind lottery. In addition, the District operates the Roberto Clemente International Dual Language School. Like the magnet schools, students who apply are selected randomly.

+/-15% or +/- 20% deviation from the overall student racial percentages to determine if a school is racially identifiable.") (citing *United States v. Georgia,* 171 F.3d 1333, 1338 (11th Cir. 1999) (using 20% deviation); *United States v. Tex. Educ. Agency,* 679 F.2d 1104, 1114 (5th Cir. 1982) (using 20% deviation)). In fact, 24 out of 25 District schools have student enrollments within 15 percentage points of the District-wide racial composition. *See Belk v. Charlotte-Mecklenburg Bd. of Educ.,* 269 F.3d 305, 319 (4th Cir. 2001) ("[P]lus/minus fifteen percent variance is clearly within accepted standards, and provides a reasonable starting point in the unitary status determination."); *Singleton v. Jackson Mun. Separate Sch. Dist.,* 419 F.2d 1211 (5th Cir. 1969).

**<u>2025-2026 Student Enrollment</u>**

**** District-wide Totals***

| | White | | Black | | Hispanic | | Other Race(s) | | Total |
|---|---|---|---|---|---|---|---|---|---|
| **District-wide** | 1568 | 8.8% | 3637 | 20.3% | 11607 | 64.9% | 1072 | 6.0% | 17884 |

**** High Schools***

| | White | | Black | | Hispanic | | Other Race(s) | | Total |
|---|---|---|---|---|---|---|---|---|---|
| **Crosby** | 93 | 6.6% | 332 | 23.7% | 899 | 64.2% | 76 | 5.4% | 1400 |
| **John F. Kennedy** | 105 | 8.2% | 275 | 21.5% | 856 | 66.8% | 45 | 3.5% | 1281 |
| **Wilby** | 60 | 5.1% | 303 | 25.5% | 765 | 64.4% | 60 | 5.1% | 1188 |
| **Waterbury Arts Magnet** | 116 | 23.9% | 94 | 19.4% | 243 | 50.1% | 32 | 6.6% | 485 |
| **Waterbury Career Academy** | 88 | 12.0% | 183 | 24.9% | 412 | 56.1% | 52 | 7.1% | 735 |
| | | | | | | | | | |
| **Total** | 462 | 9.1% | 1187 | 23.3% | 3175 | 62.4% | 265 | 5.2% | 5089 |

**** Middle Schools***

| | White | | Black | | Hispanic | | Other Race(s) | | Total |
|---|---|---|---|---|---|---|---|---|---|
| **North End** | 40 | 5.1% | 194 | 22.5% | 584 | 67.7% | 44 | 5.1% | 862 |
| **Michael F. Wallace** | 90 | 6.6% | 246 | 21.8% | 722 | 64.1% | 68 | 6.0% | 1126 |
| **West Side** | 78 | 8.2% | 183 | 17.8% | 721 | 70.2% | 45 | 4.4% | 1027 |
| **Waterbury Arts Magnet** | 93 | 23.9% | 56 | 16.6% | 165 | 49.0% | 23 | 6.8% | 337 |
| | | | | | | | | | |
| **Total** | 301 | 9.0% | 679 | 20.3% | 2192 | 65.4% | 180 | 5.4% | 3352 |

**** Elementary Schools***

| | White | | Black | | Hispanic | | Other Race(s) | | Total |
|---|---|---|---|---|---|---|---|---|---|
| **Bucks Hill** | 11 | 2.5% | 49 | 11.2% | 372 | 84.9% | 6 | 1.4% | 438 |
| **Bunker Hill** | 35 | 8.0% | 99 | 22.7% | 268 | 61.2% | 34 | 7.8% | 436 |
| **Carrington** | 69 | 14.7% | 110 | 23.4% | 253 | 53.8% | 38 | 8.1% | 470 |
| **H.S. Chase** | 75 | 11.4% | 120 | 18.3% | 412 | 62.8% | 49 | 7.5% | 656 |
| **Wendell L. Cross** | 77 | 12.3% | 140 | 22.4% | 342 | 54.6% | 67 | 10.7% | 626 |
| **Driggs** | 21 | 4.8% | 91 | 20.6% | 293 | 66.3% | 37 | 8.4% | 442 |
| **Duggan** | 17 | 4.0% | 90 | 21.4% | 289 | 68.8% | 24 | 5.7% | 420 |
| **M.M. Generali** | 44 | 9.6% | 97 | 21.2% | 274 | 59.8% | 43 | 9.4% | 458 |
| **John G. Gilmartin** | 23 | 4.7% | 89 | 18.4% | 333 | 68.7% | 40 | 8.2% | 485 |
| **Hopeville** | 24 | 6.0% | 61 | 15.3% | 307 | 76.9% | 7 | 1.8% | 399 |
| **F.J. Kingsbury** | 12 | 2.8% | 96 | 22.3% | 287 | 66.6% | 36 | 8.4% | 431 |
| **Maloney Interdistrict Magnet** | 105 | 16.6% | 109 | 17.3% | 360 | 57.1% | 57 | 9.0% | 631 |
| **Jonathan E. Reed** | 18 | 3.8% | 109 | 23.1% | 319 | 67.7% | 25 | 5.3% | 471 |
| **Frank G. Regan** | 12 | 5.5% | 46 | 21.1% | 143 | 65.6% | 17 | 7.8% | 218 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **International School** | 7 | 2.2% | 22 | 6.8% | 291 | 89.8% | 4 | 1.2% | 324 |
| **Sprague** | 11 | 3.1% | 59 | 16.4% | 280 | 77.8% | 10 | 2.8% | 360 |
| **Tinker** | 62 | 11.3% | 100 | 18.2% | 355 | 64.8% | 31 | 5.7% | 548 |
| **Walsh** | 6 | 2.0% | 64 | 20.9% | 226 | 73.9% | 10 | 3.3% | 306 |
| **Washington** | 15 | 5.3% | 36 | 12.8% | 218 | 77.6% | 12 | 4.3% | 281 |
| **Woodrow Wilson** | 10 | 2.3% | 78 | 18.2% | 321 | 74.8% | 20 | 4.7% | 429 |
| **Rotella Interdistrict Magnet** | 151 | 24.6% | 106 | 17.3% | 297 | 48.4% | 60 | 9.8% | 614 |
| | | | | | | | | | |
| Total | 805 | 8.5% | 1771 | 18.8% | 6240 | 66.1% | 627 | 6.6% | 9443 |

**2. The District is in Full Compliance with the 1973 Order's English Language Programming Requirements.**

The 1973 Order also requires the District to provide a program that adequately meets the needs of its non-English speaking students, to evaluate the program annually, and to provide the necessary resources to meet fully the needs of non-English speaking students. 1973 Order at 7.

The District has fully and satisfactorily complied with the 1973 Order's English Language provisions. The District has developed and continues to maintain robust programming for non-English speaking students, whereby students overcome language barriers that impede their equal participation in school. Specifically, the District provides English as a Second Language (ESL) services, the purpose of which is to improve non-English speaking students' proficiency in reading, writing, speaking, and listening in English. The District provides ESL services through a push-in or pull-out model.

In addition to ESL services, the District offers bilingual programming at every grade level. Students in emergent bilingual programs use their primary language as a resource while acquiring

full proficiency in English, and multilingual students in transitional bilingual programs start with native language instruction and gradually increase their English use.

At the elementary level, the District offers bilingual programs at Bucks Hill, H.S. Chase, and Hopeville. Moreover, the District operates an International Dual Language School serving preschool through fifth grade, and will continue adding one grade a year to ultimately have students in preschool through eighth grade eligible to attend by the 2028-2029 school year.

At the secondary level, all three District comprehensive middle schools offer bilingual programs across all content areas. Likewise, the District maintains bilingual programs at all three comprehensive high schools. Notably, although the state requires school districts to offer bilingual programs only through 9th grade, the District has voluntarily extended its bilingual programming through 12th grade for all students who transfer in with fewer than thirty months before graduation.

In short, the District's English Language programming across all grade levels demonstrates its continued commitment to ensuring its non-English speaking students overcome language barriers and participate equitably in education.

## III. CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court grant the Joint Motion for Declaration of Unitary Status and Dismissal.

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

/s/ Teresa Yeh
TERESA YEH (phv209345)
Senior Trial Attorney
Educational Opportunities Section
Civil Rights Division
U.S. Department of Justice
150 M Street, N.E.
Washington, DC 20530
Telephone: (202) 532-3863
Fax: (202) 514-8337
Teresa.Yeh@usdoj.gov

*Attorneys for the United States of America*

BY: /s/ ct05394
Joseph A. Mengacci, Special Counsel
Federal Bar Number: ct ct05394
Office of the Corporation Counsel
235 Grand Street, 3rd Floor
Waterbury, Connecticut 06702
Phone: (203) 574-6731
Fax: (203) 574-8340
jmengacci@waterburyct.org

*Attorneys for the Board of Education of Waterbury, Connecticut*

## CERTIFICATE OF SERVICE

I certify that, on this 12th day of May 2026, I electronically filed the foregoing Joint Motion for Declaration of Unitary Status and Dismissal with the Clerk of the Court using the CM/ECF system, to make service on all counsel of record.

/s/ Teresa Yeh
TERESA YEH (phv209345)
Senior Trial Attorney